UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| VIBRANT CREDIT UNION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-04049-SLD-JEH |
| | ) |
| INFINITY FEDERAL CREDIT UNION, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is Defendant Infinity Federal Credit Union's ("Infinity") Motion to Dismiss Count I Pursuant to F.R.C.P. 12(b)(6), ECF No. 6. For the following reasons, the motion is GRANTED.

**BACKGROUND[1]**

Both Infinity and Plaintiff Vibrant Credit Union ("Vibrant") are member-owned credit unions. Between December 2018 and September 2019, the parties engaged in discussions regarding a potential merger of the two institutions. As an offer to engage in merger negotiations, Vibrant drafted a Letter of Intent (the "Letter of Intent" or "Letter") setting forth certain terms and conditions that the parties expected the eventual definitive written agreement (the "Definitive Agreement") providing for the merger transaction (the "Transaction") to include. The Letter was negotiated by both parties. On June 18, 2019, Matt McCombs, the CEO of Vibrant, and Elizabeth Hayes, the CEO of Infinity, both signed the Letter. The Letter states that

---

[1] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from the complaint, ECF No. 1.

1

"[b]ased on the information currently known to VIBRANT, it is proposed that the Definitive Agreement include" certain terms, including one clause (the "costs clause") which provides that

> VIBRANT will cover all costs and expenses, unless the Transaction does not take place, or is otherwise cancelled. If the Transaction does not take place, the expenses will be split based on the prorated percentage of total assets of both Parties determined by the June 30, 2019 financial call report.

Letter 1–2, Compl. Ex. B, ECF No. 1-2 at 5–8.

The merger efforts were ultimately unsuccessful. On September 20, 2019, Infinity sent a written notice of termination of the negotiations to Vibrant. A total of $395,072.60 had been incurred in costs as a result of the merger attempt, all of which had been paid by Vibrant. Infinity's pro-rata share of the merger costs comes to $121,247.78; Infinity has failed to pay Vibrant any of this amount.

On March 18, 2021, Vibrant filed suit against Infinity, bringing claims for breach of contract (Count I) and promissory estoppel (Count II). Compl. 4–6, ECF No. 1.[2] Infinity now moves to dismiss Count I[3] of the complaint for failure to state a claim. Mot. Dismiss 1.

## DISCUSSION

### I. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934

---

[2] The Court has subject matter jurisdiction over this action on the basis of diversity. *See* Compl. 1, 3 (asserting that the parties are citizens of different states and reasonably alleging that Vibrant seeks damages in excess of $75,000).
[3] The motion to dismiss makes clear that Infinity only seeks the dismissal of Count I of the complaint. *See* Mot. Dismiss 1. Likewise, the memorandum in support of the motion to dismiss discusses only Count I. *See* Mem. Supp. Mot. Dismiss 2–4, ECF No. 6-1. Thus, although Infinity includes in the memorandum that it "respectfully requests that the Court dismiss [Vibrant's] [c]omplaint in its entirety," *id*. at 5, the Court assumes that this is an error and that Infinity only wishes the Count to dismiss Count I.

(7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding on a motion to dismiss, the court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## II.   Analysis

In Count I of the complaint, Vibrant alleges that the Letter of Intent is a valid contract between the parties and that Infinity has breached the contract by failing to pay its *pro rata* share of the merger costs. Compl. 4–5. Infinity disagrees, arguing that the Letter of Intent is not binding and therefore cannot obligate Infinity to pay any portion of the costs. Mem. Supp. Mot. Dismiss 3, ECF No. 6-1. As such, Infinity asserts, the Court should dismiss Count I of the complaint for failure to state a claim. Mot. Dismiss 1.

In Illinois,[4] "letters of intent may be enforceable." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). However, "such letters are not necessarily enforceable unless the parties intend them to be contractually binding." *Id*. If a letter provides that execution of a definitive contract is a condition precedent to the enforceability of the terms, the letter does not bind the parties. *Terracom Dev. Grp. Inc. v. Coleman Cable & Wire Co.*, 365 N.E.2d 1028, 1031 (Ill. App. Ct. 1977) ("Where the reduction of an agreement to writing and its formal execution is viewed by the parties as a condition precedent to the vesting of rights and duties, there can be no contract until then, even if the actual terms have been agreed upon." (quotation marks omitted)). But "the mere recitation in the writing that a more formal agreement was yet to be drawn" does not make the letter unenforceable if the parties intend it to be binding. *Interway, Inc. v. Alagna*, 407 N.E.2d 615, 618 (Ill. App. Ct. 1980); *see also Quake*, 565 N.E.2d at 993 ("The fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements mere negotiations, where it is clear that the ultimate contract will be substantially based upon the same terms as the previous document." (quotation marks omitted)).

Thus, to resolve the instant motion, the Court will examine whether the parties intended the Letter of Intent to be binding. "The determination of the intent of the parties may be a question of law or a question of fact, depending on the language of the document." *Chi. Inv. Corp. v. Dolins*, 418 N.E.2d 59, 62 (Ill. App. Ct. 1981). If the Letter of Intent's language "is unambiguous, the construction of the purported contract is a question of law"; however, if it is ambiguous, "the determination of [the Letter's] meaning is a question of fact" and cannot be resolved at the motion to dismiss stage. *See id*. The Court will first analyze whether the

---

[4] Both parties agree that Illinois law applies here. *See* Mem. Supp. Mot. Dismiss 2–4 (citing exclusively to Illinois law); Resp. Mot. Dismiss 3–9, ECF No. 8 (same).

4

language of the Letter of Intent is ambiguous and, if it is not, it will then determine what the text of the Letter indicates as to whether the parties intended to bound by the Letter. *See Quake*, 565 N.E.2d at 994 (noting that a determination as to whether a Letter of Intent's language is ambiguous is a question of law). For the Court to grant Infinity's motion, the language within the four corners of the Letter must show "that the alleged contract unambiguously indicated that it was in reality not a contract, but rather some lesser undertaking by the parties which was a precursor to a valid and enforceable agreement." *See Dolins*, 418 N.E.2d at 62.

    a. **Ambiguity**

A contract is ambiguous if it is "capable of being understood in more senses than one." *First Nat'l Bank of Chi. v. Victor Comptometer Corp.*, 260 N.E.2d 99, 102 (Ill. App. Ct. 1970). A court will consider a letter of intent to be ambiguous as to the parties' intent, then, if the language of the letter can be interpreted to both show an intent to be bound and an intent not to be bound. In analyzing whether an agreement shows an intent to be bound, courts consider factors such as "whether the agreement contains many or few details, . . . whether the agreement requires a formal writing for the full expression of the covenants, and whether the negotiations indicated that a formal written document was contemplated at the completion of the negotiations." *Quake*, 565 N.E.2d at 994. "To determine intent, the entire contract must be viewed as a whole." *Magnus v. Lutheran Gen. Health Care Sys.*, 601 N.E.2d 907, 913 (Ill. App. Ct. 1992).

Here, the Letter of Intent is unambiguous as to the parties' intent not to be bound. One clause of the Letter states that "[t]he provisions in this letter of intent are intended only as an expression of intent on behalf of the Parties; are not intended to be legally binding on either Party, or the Stockholders; and are expressly subject to the execution of an appropriate Definitive

Agreement." Letter 2; *see also id*. at 1 ("This letter of intent is not a binding contract between the Parties."). Illinois courts have found that language in a letter of intent stating that a desired transaction is "subject to" the execution of a definitive agreement is unambiguous, clearly indicating that "a formal, written agreement [i]s a condition precedent to the formation of a binding contract." *See Interway*, 407 N.E.2d at 619–20; *see also Magnus*, 601 N.E.2d at 912 (holding that where a letter of intent stated that "[e]ach party's obligations . . . [were] subject to and contingent upon the execution of the [definitive agreement]," the letter "was not ambiguous" and "clearly made the [definitive agreement's] execution within 30 days a condition precedent to any binding contract" (quotation marks omitted)). The inclusion of the "subject to" language in the Letter of Intent in this case makes the Letter similarly unambiguous here. *See* Letter 2.[5] Indeed, "the only result apparent from this language is that neither party would be bound to the transaction until both had signed a formal and definitive contract," *Terracom*, 365 N.E.2d at 1031, which did not happen as the negotiations failed before a Definitive Agreement was reached.

Vibrant disputes that this language unambiguously establishes that the execution of a Definitive Agreement was a condition precedent to the formation of a binding contract. Rather, it argues that the language in the Letter is similar to that of the letter of intent in *Quake* and contends that the Court should follow *Quake*'s lead and find the Letter of Intent ambiguous. *See* Resp. Mot. Dismiss 7–9, ECF No. 8. In *Quake*, the court found that a letter of intent was ambiguous because certain terms in the letter indicated an intent not to be bound, while other

---

[5] Infinity further points out that the Definitive Agreement's execution "would be subject to the satisfactory completion of VIBRANT's and INFINITY's due diligence investigation of each other's businesses and would also be subject to approval of the Parties' respective board[s] of directors." Mem. Supp. Mot. Dismiss 3 (emphasis omitted) (quoting Letter 1). This additional condition precedent to the formation of a binding contract further clarifies the parties' unambiguous intention that the Letter of Intent be only one step in the long process towards an enforceable agreement.

6

terms evinced an intent to be bound. *Quake*, 565 N.E.2d at 996–97. Among the terms implying an intent to be bound were an indication that "the work was to commence approximately 4 to 11 days after the letter was written" and a clause providing that one party reserved the right to cancel the letter if the parties could not agree on a fully executed definitive agreement. *Id*. at 995, 996–97.

      The Court finds *Quake* distinguishable. The Letter includes a reference to a financial call report scheduled to take place on June 30, 2019, Letter 2, which Vibrant believes is comparable to the work commencement provision in *Quake*, Resp. Mot. Dismiss 8. But a plan for the actual work that is the subject of an agreement to commence in short order (as in *Quake*) is very different from the financial call report referenced in the Letter here, which was not the desired end result of the negotiations (the merger was) but rather merely a part of the discussions between the parties leading up to the formation of a Definitive Agreement. And there is no clause in the Letter of Intent providing for the cancellation of the *Letter*—the Letter only notes that the *Transaction* may be cancelled, but the Transaction was to take place only after the formation of the Definitive Agreement. *See* Letter 1; *cf. Inland Real Est. Corp. v. Christoph*, 437 N.E.2d 658, 660 (Ill. App. Ct. 1981) ("The clause 'at which time this letter shall be null and void' evinces the intent to be then bound, for we fail to see the necessity for a provision nullifying or voiding a writing in the future if the parties never intended for that writing to be binding from its inception."); *but see Magnus*, 601 N.E.2d at 913 (finding that the letter was unambiguous because it was clear that "the parties intended that execution of the formal Agreement within 30 days was a condition precedent to the formation of a contract" even though the letter also provided that "if the Agreement were not executed within 30 days, the [l]etter of [i]ntent was void").

7

Additionally, the letter in *Quake* did not include the phrase "subject to" or any other language indicating a condition precedent, *Quake*, 565 N.E.2d at 992–93, further distinguishing that letter from the one at hand.  *See Magnus*, 601 N.E.2d at 912–13 (noting that the *Quake* letter "did not include a condition precedent or a 'subject to' clause" and stating that "[t]here is a difference between the execution of a formal agreement being a condition precedent to a binding contract and a mere reference to a future contract").

Finally, in *Quake*, "[t]he letter of intent included detailed terms of the parties' agreement."  *Quake*, 565 N.E.2d at 996.  As Infinity notes, while the Letter of Intent "identifies some terms that [Vibrant] wished to include in the final Definitive Agreement, if one was reached[,] [t]hese proposed terms do not include a date that the proposed merger would be consummated, a date that the Definitive Agreement would be executed, financial terms of the proposed merger, comprehensive releases, discussion of how assets would conveyed, or comprehensive warranties and notices."  Mem. Supp. Mot. Dismiss 3–4 (citation omitted).  In the absence of these terms that "would be essential [to] the completion of a successful merger between two sizable financial institutions," *see id*. at 4, the Court finds that the letter reflects "an incomplete state of agreement," as questions concerning these important terms "could arise and would require either clarification or additional agreements before the terms would have contractual finality."  *See Interway*, 407 N.E.2d at 620.[6]  None of the terms which render the *Quake* letter ambiguous are present here.

Beyond the comparisons to *Quake*, Vibrant also points to language in the Letter that provides that after Infinity signed the Letter, the Letter "w[ould] constitute [their] agreement

---

[6] In *Interway*, the court also noted that while there were some "inconsistencies exist[ing] on the face of the document," they did not render the letter of intent ambiguous but rather "exhibit[ed] the tentative nature" of an incomplete agreement and "indicate[d] the inconclusive state of the negotiations between the parties."  *Interway*, 407 N.E.2d at 620.

with respect to its subject matter." *See* Resp. Mot. Dismiss 10 (emphasis omitted) (citing Letter 3). However, the letter in *Interway* likewise contained the phrase "This will confirm our agreement," but the court nonetheless found that the letter was not binding because it was unambiguous that the transaction was subject to a definitive binding contract being executed. *Interway*, 407 N.E.2d at 620. As in *Interway*, the fact that the Letter references an "agreement" does not counteract the existence of the condition precedent.

The Court does not find that the Letter of Intent can be interpreted in more than one way as to the parties' intent. As such, the Court concludes that the Letter is unambiguous.

### b. Intent

Having found the Letter of Intent to be unambiguous, the Court may determine the parties' intention as to the enforceability of the Letter as a matter of law by looking to the Letter's language. *See Interway*, 407 N.E.2d at 619 ("[I]f the trial court classifies the writings as unambiguous, then the intention of the parties must necessarily be determined solely from the language used in the document."); *cf. id.* (noting that if a court finds a letter of intent's language to be ambiguous, "parol evidence is admissible to explain and ascertain what the parties intended." (quotation marks omitted)). As noted above, the Court finds that the Letter's language unambiguously indicates that the parties did not intend the Letter to be binding. *See supra* Section II(a).

Vibrant proposes an alternate interpretation: that the costs clause is binding "independent of the execution of a Definitive Agreement" because it applies to costs accrued during merger negotiations and thus should be treated differently than any clause that might be dependent on the execution of a subsequent formal agreement. Resp. Mot. Dismiss 4–5.[7] It points primarily to

---

[7] Although not made explicit, the Court assumes that Vibrant's argument here is intended to apply if the Court found the Letter unambiguous and proceeded to interpreting the Letter's language to discern the parties' intention. *See*

9

the language stating that Infinity's duty to pay a portion of the costs was conditioned on the failure of the Transaction to occur and argues that, as such, this obligation "simply cannot be read as being dependent upon an eventual Definitive Agreement without reaching an absurd result." *Id*. at 5–6.

The Court disagrees. The plain text of the Letter does not support the interpretation that the costs clause is binding independent of the execution of a Definitive Agreement. First, the Letter states that "[t]he provisions in this letter of intent"—not "some provisions" or "the provisions not discussing merger negotiations"—"are expressly subject to the execution of an appropriate Definitive Agreement." *See* Letter 2. The clear implication is that *all* provisions in the Letter, including the costs clause, are subject to the execution of the Definitive Agreement and cannot be considered binding until this condition precedent is met. *See Interway*, 407 N.E.2d at 619–20.

Second, the costs clause appears as one of several enumerated terms under the statement, "[b]ased on the information currently known to VIBRANT, it is proposed that the Definitive Agreement include the following terms . . . ." *See* Letter 1–3. This organization makes clear that the costs clause is set forth as a proposed term to be included in the Definitive Agreement, not as a term intended to be binding on its own. Vibrant appears to conflate the Definitive Agreement with the Transaction, and, indeed, if these terms were interchangeable, it would be absurd to include a clause that could only be triggered by the parties' failure to reach a Definitive Agreement when the execution of the Definitive Agreement is itself a condition for the term to be binding. But these terms are not interchangeable, and looking to the Letter as a whole, *see*

---

Resp. Mot. Dismiss 9 ("[T]here is *simply no other way to interpret* the Letter of Intent than to find the parties intended to be bound by their agreement to split the merger costs . . . in the event the merger transaction was not completed." (emphasis added)).

*Magnus*, 601 N.E.2d at 913, the Court interprets the costs clause to account for the situation in which the Definitive Agreement was executed but the Transaction was subsequently cancelled or failed to come to fruition. Contrary to Vibrant's representations, there is no support for an interpretation in which the costs clause, because it applies to costs incurred during merger negotiations, is binding but other terms that set forth obligations after the execution of a Definitive Agreement are not.

For these reasons, the Court finds that the Letter of Intent is not binding and, therefore, that Vibrant has failed to state a claim for breach of contract. The Court grants Infinity's motion to dismiss Count I of the complaint.

## CONCLUSION

Accordingly, Defendant Infinity Federal Credit Union's Motion to Dismiss Count I Pursuant to F.R.C.P. 12(b)(6), ECF No. 6, is GRANTED. Count I is dismissed. Defendant is directed to file an answer to Count II within 14 days. *See* Fed. R. Civ. P. 12(a)(4)(A).

Entered this 3rd day of March, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE